ERNEST W. BLASIUS, Appellant, v. AVRI CHEMICAL COMPANY, Respondent.

First Department, November 8, 1918.

**Sale — action for failure to deliver property according to contract — evidence as to making of contract — verdict against weight of evidence — immaterial and irrelevant evidence — new trial.**

Action to recover damages for failure to deliver according to contract a quantity of benzoic acid. *Held,* that a verdict in favor of the defendant who denied the making of the contract was against the weight of the evidence.

Although it was competent to show any facts existing at the time of the claimed making of the contract bearing upon the issue whether in fact the contract was made, it was immaterial and irrelevant to show what the defendant was able to do after that time or what difficulty it had in securing raw material thereafter.

For the reception of the aforesaid incompetent evidence and also upon the ground that the verdict is against the weight of the evidence, judgment must be reversed and a new trial granted.

APPEAL by the plaintiff, Ernest W. Blasius, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 4th day of April, 1918, upon the verdict of a jury, and also from an order entered in said clerk's office on the 3d day of April, 1918, denying plaintiff's motion for a new trial made upon the minutes.

*Woolsey A. Shepard* of counsel [*John H. Taylor* with him on the brief; *Thomas & Houghton,* attorneys], for the appellant.

*James I. Cuff,* for the respondent.

SMITH, J.:

The action is brought to recover damages for failure to deliver according to contract 950 pounds of benzoic acid. The making of the contract is denied. The contract claimed to have been made provided for the delivery by the defendant to the plaintiff of 1,000 pounds in December, 1917. In October of that year the defendant's president, one Avstreih, brought to the broker, Huisking, a sample of benzoic acid

which the defendant had made and which acid the defendant desired to sell. The sample was left with the broker, according to the testimony of the defendant's president, for the purpose of procuring sale. This defendant's president admits. About the first day of November the broker found that the plaintiff desired to purchase benzoic acid; he swears that he thereupon communicated with the defendant's president, who agreed to deliver to the plaintiff 1,000 pounds of benzoic acid in December at the price of one dollar and ninety cents per pound; to this price the plaintiff acceded and the broker drew a contract, mailing one to the plaintiff and one to the defendant; the plaintiff received his copy; the defendant denies having received any contract. Nothing further developed until December third, when the broker wrote the defendant in reference to other quotations that the defendant had given for benzoic acid, and in that letter stated: " We beg to call your attention to the order placed with you sometime ago for account of Mr. E. W. Blasius for December delivery, and we would appreciate it if you would advise us by return mail about when you will be in a position to make delivery." That letter was never answered by the defendant. The defendant's president, however, swears that he called up the broker and talked with the broker over the phone after receiving the letter; he does not swear to the conversation which he had over the phone, nor is there any evidence that he at any time before January questioned his obligation under the Blasius contract. If, as the defendant's president now swears, no contract was made early in November for the delivery to Blasius of this 1,000 pounds of benzoic acid, upon the receipt of this letter the defendant would have been very quick to have denied the existence of the contract. The broker swears that he made no denial of it, either by letter or by telephone. On the other hand, on December twenty-second the defendant sent to this broker for account of Blasius 50 pounds of benzoic acid; the price charged was one dollar and ninety cents, the exact price mentioned in the contract. Upon December twenty-second the price of benzoic acid in the market was from three dollars to four dollars. When pressed to give a reason why he should send this benzoic acid to the account of Blasius at one dollar and ninety cents instead of at the market price,

he says that he had agreed with the broker to let him have the first benzoic acid manufactured at one dollar and ninety cents. Upon the stand the defendant's president swears that he never knew Blasius until December twenty-second, when the broker told him to put upon his bill " for the account of E. W. Blasius." Nevertheless, he produces and admits he received the letter of December third, which calls his attention to the Blasius contract. He swears that he never offered benzoic acid for sale prior to January and yet he is shown a letter offering it for sale upon December first at four dollars per pound, and the letter of the broker to him of December third was undoubtedly in response to such an offer. An examination of all the evidence tends strongly to establish that this 50 pounds delivered to Blasius upon December twenty-second at one dollar and ninety cents was delivered in pursuance of a contract which he had made to deliver 1,000 pounds in December at that price and the verdict of the jury was clearly against the weight of evidence.

I am of the opinion, moreover, that a new trial should be granted for legal error committed by the trial judge. This sale was of benzoic acid which was to be manufactured by the defendant. The trial judge permitted the defendant to show its inability to manufacture any benzoic acid before December twenty-second and also the difficulty in getting raw material for such manufacture. This evidence was admitted as bearing upon the probabilities of the making of a contract; it was probably competent to show any facts existing at the time of the claimed making of the contract as bearing upon the issue whether, in fact, the contract was made, but what the defendant was able to do after that time, or what difficulty the defendant had in securing raw material thereafter, is entirely immaterial and irrelevant and the reception of such evidence was clearly prejudicial to the plaintiff and calls for the reversal of this judgment. Criticism might be made of the manner in which objections were made to this evidence, but they were sufficiently explicit to call the court's attention clearly to the plaintiff's claim of irrelevancy, and the ruling of the trial judge was made in view thereof and allowed in evidence facts that would appeal to the sympathy of the jury, strongly tending to influence a verdict in behalf of the defend-

ant. For the reception of this incompetent evidence, therefore, and also upon the ground that the verdict is against the weight of evidence, the judgment and order must be reversed and a new trial granted, with costs to appellant to abide the event.

CLARKE, P. J., LAUGHLIN, SHEARN and MERRELL, JJ., concurred.

Judgment and order reversed and new trial ordered, with costs to appellant to abide event.